## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEDEDIAH ADAM WHITE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )     **CIVIL ACTION** |
| **v.** | ) |
| | )     **No. 21-2151-KHV** |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–34. For reasons stated below, the Court affirms the decision of the Commissioner.

## Procedural Background

On October 21, 2019, plaintiff protectively filed his application for disability insurance benefits.[1] He claimed a disability onset date of May 4, 2018. Initially and upon reconsideration, the agency denied plaintiff's application. In January of 2021, after a hearing at which plaintiff, his attorney and a vocational expert testified, an administrative law judge ("ALJ") denied his claim. The ALJ found that plaintiff was not disabled by September 30, 2019, the date last insured, within the meaning of the Act. The Appeals Council denied plaintiff's request for review, making the ALJ decision the final decision reviewable by this Court. 42 U.S.C. § 405(g).

---

[1]     The Social Security Administration explains that "[p]rotective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement." Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. See Social Security Disability Resource Center, http://www.ssdrc.com/disabilityquestionsmain20.html (last visited March 14, 2022).

**Factual Background**

The following is a brief summary of the factual record.

Plaintiff is 42 years old and has a generalized educational development ("GED") certification.  He has not engaged in substantial gainful activity since May 4, 2018, the alleged onset date.  Prior to that time, he worked as a mental health technician, a security guard and a home health aide, all of which constituted substantial gainful activity performed long enough for him to achieve average performance.  From 2001 to 2008, plaintiff received a steadily increasing wage.  Tr. 200, 206.  In 2009, while working, plaintiff suffered an injury to his right leg.  Tr. 190.  As a result, he received lower income compared to 2008.  Tr. 197.  In 2010, plaintiff attempted to return to his job but only earned $3,336.  Tr. 206–07.  In 2011, he started another job, but only earned $2,997.  Tr. 207.  From 2012 to 2014, plaintiff received no income.  Tr. 207.  From 2015 until 2018, plaintiff returned to work and increased his wages to over $20,000.  Tr. 198.

Plaintiff alleges that he is disabled because of cervical and thoracic degenerative disc disease, peripheral neuropathy in his extremities, bilateral plantar fasciitis and tendonitis, osteoporosis, obesity, migraines, chronic bronchitis, gastrointestinal disorder, dermatitis and psoriasis, low testosterone and right knee surgery.  Further, he alleges that these physical impairments are accompanied by depression, adjustment disorder with anxiety mood and attention deficit hyperactivity disorder ("ADHD").

I.     **Plaintiff's Medical Evidence**

These doctors did not testify but plaintiff submitted medical records of treatments by them.

A.     Dr. Newkirk

Dr. Jonathan Newkirk, M.D. examined plaintiff on March 19, April 24, May 22 and July 30, 2018 and January 1, 2019.  Dr. Newkirk found that plaintiff had sharp or hot pain in his

feet, ankles and toes.  Tr. 381, 385, 390, 394.  Plaintiff reported upper respiratory symptoms and requested a refill of Percocet for back pain.  Tr. 394.  Dr. Newkirk diagnosed him with peripheral neuropathy, pain in the ankle, bilateral plantar fasciitis, steatosis of liver, folliculitis, proteinuria, tinea capitis and bronchitis.  Tr. 385, 390, 394.  Dr. Newkirk also administered steroid injections to both heels.  Tr. 390.

      B.       Dr. Carabetta

Dr. Vito Carabetta, M.D. examined plaintiff on April 23, 2018.  Tr. 328.  Plaintiff presented with bilateral lower extremity distal dysesthesias that had been present for six months.  Tr. 328. He reported weakness toward the foot and ankle areas bilaterally, which caused him to occasionally stumble.  Tr. 328.  His range of motion was normal, and his muscle testing revealed 5/5 strength.  Tr. 330.  His sensation was diminished in both feet.  Tr. 330.  Dr. Carabetta performed a motor nerve conduction study and found an abnormal electrodiagnostic study consistent with at least a moderate degree of generalized peripheral neuropathy.  Tr. 329.

      C.       Dr. Smith

Plaintiff relied on a report by Dr. Raphael Smith, Psy.D., a state agency medical consultant[2] at the initial level.  On January 7, 2020, Dr. Smith determined that plaintiff's condition was not disabling on any date through September 30, 2019.  He also found that the evidence regarding plaintiff's ability to understand, remember or apply information, interact with others, concentrate

---

[2]      The Social Security Administration defines a state agency medical consultant as "a member of a team that makes disability determinations in a State agency (see § 404.1615), or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves.  The medical consultant completes the medical portion of the case review and any applicable residual functional capacity assessment about all physical impairment(s) in a claim."  See Social Security Administration, https://www.ssa.gov/OP_Home/cfr20/404/404-1616.htm#:~:text=(a)%20What%20is%20a%20medical,we%20make%20disability%20determinations%20ourselves (last visited March 15, 2022).

persist or maintain pace, and adapt or manage oneself was insufficient to fully evaluate his claim for disability and that the necessary evidence could not be obtained.[3]  Tr. 85–86.

      D.     <u>Dr. McGraw</u>

On January 14, 2020, Dr. Dennis McGraw, DO, a state agency medical consultant at the initial level, determined that based on plaintiff's medical records, his statements and how his condition affected his ability to work, plaintiff's condition was not disabling on any date through September 30, 2019.  Tr. 86.  He found that plaintiff had a history of peripheral neuropathy, spinal disorders, degenerative changes of left foot, migraines and internal derangement of his knee that did not meet or equal a listing level on its own.  Tr. 84.  He also found that the evidence in plaintiff's file regarding his physical functional limitations was insufficient to fully evaluate his claim and that needed evidence could not be obtained.

**II.**     **ALJ's Medical Evidence**

These doctors did not testify but plaintiff submitted medical records of treatments by them.

      A.     <u>Dr. Zwibelman</u>

Dr. Jay Zwibelman, M.D. examined plaintiff on August 30 and November 20, 2018 and March 27, 2019, for neuropathy and reported memory loss.  Tr. 440, 443, 448.  Plaintiff reported extensive symptoms of numbness, pain and tingling.  Tr. 443.  Despite these reports, plaintiff's neurologic exam was normal.  Tr. 444.  Dr. Zwibelman did not feel that peripheral neuropathy caused his symptoms.  Tr. 445.

      B.     <u>Dr. Bamber</u>

Treating physician Dr. Norman Bamber, M.D. examined plaintiff on August 9, 2019.

---

[3]     An individual claiming disability is responsible for furnishing sufficient medical and other evidence of the existence of a disability.  <u>See</u> 42 U.S.C. § 423(d)(5)(A).

Plaintiff reported "sharp stabbing pain" and numbness in both lower extremities as well as mild back pain and "difficulty sitting in a chair for any significant amount of time."  Tr. 464.  He reported no acute distress and he walked with a normal gait.  Tr. 465.  His strength was full and symmetrical with no evidence of clonus, joint deformities or laxity.  Plaintiff's cerebellar findings were normal.  Tr. 465.  His deep tendon reflexes were normal and he rose from his chair without difficulty.  Tr. 465.  His sensory function was "grossly normal to light touch" and to pin prick, and proprioception was grossly intact in both arms and both legs.  Tr. 466.  Dr. Bamber noted degenerative changes in plaintiff's spine that were "incidental" and not "relate[d] to his presenting complaints."  Tr. 466.

C.     Dr. Deutch

On November 6, 2019, an examination by treating physician Dr. Neal Deutch, Ph.D. revealed "variability in cognitive functioning" with "deficits suggested in perceptual reasoning, processing speed and working memory" as well as "severe deficits . . . suggested in sustained concentration and divided attention."   Dr. Deutch ultimately found only "mild cognitive impairment," however, with average intellectual functioning and normal "verbal conceptual reasoning, memory and executive functioning."   Plaintiff was able to maintain task orientation and sustain concentration.

D.     Dr. Kaspar

The ALJ received a report by Dr. Richard Kaspar, Ph.D., a state agency medical consultant at the reconsideration stage, the first level of appeal which involved a complete review of the claim.  On May 15, 2020, Dr. Kaspar found that plaintiff had moderate limitations in understanding, remembering, applying information, concentrating, persisting, maintaining pace and adapting or

managing himself.  Tr. 98.  He found that plaintiff was limited to one- and two-step commands.[4]
Tr. 104–05.  He also found that plaintiff was not significantly limited in his abilities to carry out
very short and simple instructions, perform activities within a schedule, work in coordination or
proximity to others, make simple work-related decisions, complete a normal workday or accept
instructions.  Tr. 103–04.

D.      Dr. Lee

The ALJ received a report by Dr. Charles K. Lee, M.D., a state agency medical consultant
at the reconsideration stage.   On May 22, 2020, Dr. Lee found that plaintiff's spine and knee
impairments, neuropathy, obesity and plantar fasciitis would limit his ability to do sustained heavy
lifting, frequent use of foot pedals, postural activities and all ladder climbing.  He went on to say,
however, that plaintiff should be able to stand and walk for six hours with routine breaks.  He
found no evidence of any ongoing issues with headaches, respiratory issues or gastritis that would
cause work related limitations.  His impairments were acute in nature and considered non-severe
by program standards.

## III.    ALJ Findings

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work.
In his order of February 5, 2021, the ALJ made the following findings:

1.  The claimant last met the insured status requirements of the Social Security Act
on September 30, 2019.

2.  The claimant did not engage in substantial gainful activity during the period
from his alleged onset date of May 4, 2018 through his date last insured of
September 30, 2019.

---

[4]      A limitation to one- and two-step commands refers to the ability to follow
instructions that involve either one or two actions to complete a task.  See Social Security
Administration,      https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-
Adult.htm (last visited March 31, 2022).

3.    Through the date last insured, the claimant had the following severe impairments: cervical and thoracic degenerative disc disease/spondylosis, peripheral neuropathy, bilateral feet plantar fasciitis and tendonitis, osteoporosis, obesity, ADHD, and depression.

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: He can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl or climb ramps or stairs; can frequently, but not constantly, perform push-pull activities with either lower extremity; can frequently, but not constantly, use foot controls with either lower extremity; is able to understand, remember, carry out, and maintain pace for simple, routine and repetitive work tasks; due to a combination of mental and physical symptoms, will be off-task or work at a slow pace for up to 5% of the workday; cannot perform fast-paced, quota-based, assembly-line production work; cannot perform work that requires performing effectively under stress (as that phrase is used in the DOT); and, can tolerate only occasional changes in the work setting or work tasks.  In addition, although not prescribed, he will occasionally use a cane for balance when walking and standing.

6.    Through the date last insured, the claimant was unable to perform any past relevant work.

7.    The claimant was born on April 6, 1979 and was 40 years old, which is defined as a younger individual age 18–49, on the date last insured.

8.    The claimant has at least a high school education.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from May 4, 2018, the alleged onset date, through September 30, 2019, the date last insured.

Tr. at 14–24 (citations omitted).

The ALJ held that the evidence presented at the hearing was sufficient to adjudicate plaintiff's claim, and plaintiff's counsel stated at the hearing that the record was complete and did not object to the admission of any exhibit. Tr. 33. In determining plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that plaintiff's impairments could cause limiting symptoms, but that his subjective complaints of their severity were not consistent with the record. Tr. 18. In support, the ALJ noted that while plaintiff alleged disability beginning in May of 2018, he had only engaged in substantial gainful activity for seven of the past 15 years and that on average he earned less than $2,000 a year between 2010 and 2016. Tr. 18. The ALJ also noted that Dr. Zwibelman conducted a neurology evaluation in mid-2018, which was unremarkable. Tr. 19.

The ALJ noted that upon exam with Dr. Bamber in 2019, plaintiff was in no acute distress and walked with a normal gait. Tr. 19. His strength was full and symmetrical with no evidence of clonus, joint deformities or laxity, and cerebellar findings were normal. Tr. 19. His deep tendon reflexes were normal and he rose from his chair without difficulty. Tr. 19. His sensory function was "grossly normal to light touch" and to pin prick, and proprioception was grossly intact in both arms and both legs. Tr. 19. Dr. Bamber noted the degenerative changes in plaintiff's spine were "incidental" and not "relate[d] to his presenting complaints." Tr. 19.

Moreover, the ALJ noted that Dr. Bamber did not advise neurosurgical intervention. Tr. 466. Plaintiff continued seeing a neurologist, but no clear etiology was discovered to explain his symptoms. Tr. 19. In addition, he could drive, prepare simple meals, read, manage funds, use the internet and care for his personal hygiene. Tr. 16. Thus, his work history and activities were not consistent with his allegations regarding his physical impairments and their impact on his ability to work. Further, the ALJ found that although plaintiff complained of memory loss,

difficulty with word finding and occasional stuttering, his neurology exam did not clearly correlate with his complaints.  Tr. 19.

After determining plaintiff's limitations, to determine whether plaintiff could perform jobs that existed in the national economy, the ALJ presented a hypothetical question to the vocational expert ("VE")[5] which included limitations in plaintiff's RFC assessment.  The VE identified three unskilled jobs from the Dictionary of Occupational Titles[6] ("DOT") that plaintiff could perform with his limitations: circuit board assembler (DOT 726.684-110), egg processor (DOT 559.687-034) and final assembler (DOT 713.687-018).  Tr. 52.

A circuit board assembler (DOT 726.684-110) inspects for defects such as missing or damaged components, loose connections or defective solder.  The job requires an individual to examine a circuit board under magnification lamps and compare boards to sample boards.  An assembler must label defects, perform minor repairs and maintain records of defects and repairs to indicate recurring production problems.  An assembler may reposition and solder misaligned components or measure clearances between board and connectors using gauges.  The United States has 68,000 circuit board assembler positions.  The position requires a GED level 2.  A GED level 2 job requires that an individual "[a]pply commonsense understanding to carry out detailed but

---

[5]        A VE provides evidence in Social Security disability adjudications by answering questions posed by the ALJ and the claimant or the claimant's representative based on hypothetical findings of age, education, work experience and the RFC.  A VE cannot comment on medical matters, such as whether he or she believes that the medical evidence indicates a certain diagnosis, disability determination or functional limitation.        See Social Security Administration, https://www.ssa.gov/appeals/ve.html (last visited March 30, 2022).

[6]        The DOT is used in Social Security disability adjudications as the primary source of occupational information to determine whether an individual can perform a position.  See U.S. Department of Labor, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last visited March 16, 2022).

uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."

An egg processor (DOT 559.687-034) removes virus-bearing fluid from fertile chicken eggs to manufacture vaccines.  The position involves using an electric saw to cut off the end of an egg, using tweezers to break the sac containing viral fluid to remove the fetal membrane, siphoning fluids into sterilized and labeled bottles for further processing and sterilizing the tweezers after each egg is harvested.  The United States has 27,000 egg processor positions.  The position also requires a GED level 2.

A final assembler (DOT 713.687-018) attaches nose pads and temple pieces to optical frames using hand tools.  The position involves aligning parts with the screw holes and using a screwdriver to insert and tighten the screws.  The United States has 12,000 final assembler positions and requires a GED level 1.  A GED level 1 job requires that an individual "Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

Based on the VE's testimony, the ALJ found that plaintiff could perform a significant number of positions in the national economy.

## <u>Standard of Review</u>

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence.  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  (quoting <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)).  It requires "more than a scintilla, but less than a preponderance."  <u>Id.</u>  (quoting <u>Lax</u>, 489 F.3d

at 1084).  Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings.  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).   The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment.    42 U.S.C. § 423(d)(1)(A).  To determine whether claimant is disabled, the Commissioner applies a five-step sequential evaluation: (1) whether claimant is currently working; (2) whether claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents claimant from continuing past relevant work; and (5) whether the impairment prevents claimant from doing any kind of work.  See 20 C.F.R. §§ 404.1520, 416.920.  If claimant satisfies steps one, two and three, he will automatically be found disabled; if claimant satisfies steps one and two, but not three, he must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to establish that claimant is capable of performing work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work with certain restrictions.

Plaintiff argues that the ALJ erred by failing to develop the record after state agency medical consultant Dr. McGraw found that because of insufficient evidence, plaintiff's claim could not be evaluated at the initial disability level.

Plaintiff argues that at Step 5, the ALJ adopted an RFC that was unsupported by substantial evidence because (1) it did not limit plaintiff to one- and two-step commands and the hypothetical to the VE therefore led to an incorrect determination that plaintiff could perform the jobs of circuit board assembler (DOT 726.684-110) and egg processor (DOT 559.687-034); (2) the ALJ did not account for the severity of plaintiff's inability to sustain concentration and the RFC should have indicated that he could not sustain concentration for the two-hour periods necessary to maintain work; and (3) when determining plaintiff's limitations, the ALJ incorrectly concluded that plaintiff's "sporadic" work history, "unremarkable" imaging and examinations and daily activities were inconsistent with his allegations regarding his physical impairments and their impact on his ability to work.

In addition, plaintiff argues that the Commissioner did not sustain her burden at step five to prove that he retains the residual functional capacity to do other kinds of work and that other work exists in significant numbers in the national economy that he is able to do. Specifically, plaintiff reiterates that because the RFC was flawed, the VE's conclusions were not based on substantial evidence. Plaintiff also argues that the VE's testimony was not consistent with the DOT because simple work is inconsistent with GED level 2 jobs which require the ability to carry out detailed instructions.

Plaintiff does not argue that he was incapable of performing the final assembler position, or that final assembler positions do not exist in significant numbers in the national economy.

## I.    Sufficiency Of The Evidence

Plaintiff argues that the ALJ erred by failing to develop the record after state agency medical consultant Dr. McGraw found that because of insufficient evidence, plaintiff's claim could not be evaluated at the initial disability level.  He argues that the ALJ should not have relied on Dr. Lee's opinion that he had sufficient evidence to adjudicate the claim because Dr. Lee did not consider new evidence to support his opinion.  Defendant argues that the ALJ was not required to adopt any findings from Dr. McGraw, and that both Dr. Lee and the ALJ believed that the evidence was sufficient to evaluate plaintiff's claim.

In her opinion, the ALJ stated that findings of insufficient evidence at the initial level were not persuasive because the hearing provided sufficient evidence to adjudicate plaintiff's claim.

The ALJ should order a consultative exam to further develop the record when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997).  Otherwise, an ALJ is not required to order an examination to resolve the issue of impairment.  Id. at 1167.  Further, when the claimant is represented by counsel at the hearing, the ALJ is entitled to rely on counsel to structure claimant's case in such a way that the claims are adequately explored.  Id. at 1167.  Unless requested or the need is clearly established, the Tenth Circuit does not impose a duty on the ALJ to order an examination.  Id. at 1168.

Here, Dr. Lee and Dr. McGraw disagreed whether the evidence was sufficient to evaluate plaintiff's claim, and the ALJ was entitled to resolve this conflict in the record.  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).  At the hearing, plaintiff's counsel indicated that the record was complete and he did not object to the admission of Dr. Lee's report.  The fact that Dr. McGraw

had previously found otherwise does not establish error in the ALJ's determination.  To overturn the ALJ's finding of fact, the Court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).  Plaintiff has not met this standard.

## II.    RFC Assessment

Plaintiff argues that substantial evidence does not support the ALJ's RFC as to his physical and mental limitations.  Defendant argues that the ALJ's RFC assessment was reasonable, supported with record evidence and meets the low bar of substantial evidence.

A plaintiff's RFC is based on how plaintiff's physical and mental limitations affect the claimant's ability to work and is "the most [a plaintiff] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").  The ALJ must base the RFC assessment on all relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment and work evaluations, if any.  Id. at *5.  The ALJ's "determination of [a plaintiff's] mental RFC involves the consideration of evidence, such as . . . [r]eports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior."  SSR 85-16, 1985 WL 56855 at *2.

On May 15, 2020, Dr. Kaspar found that plaintiff was limited to one- and two-step commands.  Further, he found that plaintiff was not significantly limited in his abilities to carry out very short and simple instructions, perform activities within a schedule, work in coordination or proximity to others, make simple work-related decisions, complete a normal workday or accept

instructions.  Based on Dr. Kaspar's medical opinion, the ALJ concluded that plaintiff was able to understand, remember, carry out and maintain pace for simple, routine and repetitive work tasks, would be off task five per cent of the workday and could not perform fast-paced, quota-based, assembly-line production work or perform effectively under stress.

Plaintiff argues that the RFC did not account for Dr. Kaspar's opinion that he had moderate impairments which limited his ability to understand, remember and carry out detailed and complex instructions and maintain attention and concentration for those duties.  Specifically, he argues that the RFC neglected to limit plaintiff to one- and two-step commands and that the resulting hypothetical to the VE led to an incorrect determination that plaintiff could perform the jobs of circuit board assembler (DOT 726.684-110) and egg processor (DOT 559.687-034).  Defendant argues that the restrictions in the RFC encompass a limitation to one- and two-step commands and arguably, are even more restrictive than limiting plaintiff to one- and two-step commands. Defendant also argues that even if the ALJ should have provided more articulation as to why he did not adopt Dr. Kaspar's finding in its entirety, such error is harmless.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184 at *7.  If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  Id.  An ALJ must explain her reasons for rejecting some of a physician's restrictions while rejecting others.  Haga, 482 F.3d at 1208.  An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.  See, e.g., Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004).

While the limitations in plaintiff's RFC were tailored to his deficits in perceptual reasoning, processing speed, working memory, sustained concentration and divided attention, its limitation to simple, routine and repetitive tasks or unskilled work does not adequately incorporate specific limitations such as one- or two-step commands. M.H. v. Saul, 2020 WL 916856, at *4 (D. Kan. Feb. 26, 2020). Based on the ALJ's failure to include a limitation to one- and two-step commands, the VE testified that plaintiff could perform the positions of circuit board assembler (DOT 726.684-110) and egg processor (DOT 559.687-034). Under Dr. Kaspar's opinion, plaintiff would not be able to perform the positions because they require more than one- or two-step commands. Both the positions involve more than two steps to complete a task because the description of each position in the DOT involves at least four tasks. Thus, the ALJ was required to and failed to explain her reasons for accepting some of a physician's restrictions while rejecting others.

Plaintiff does not argue, however, that he was incapable of performing the final assembler position, which only requires an ability to carry out simple one-or-two step instructions. Also, he does not dispute that a significant number of those positions exist in the national economy. (DOT 713.687-018).[7] An ALJ's erroneous inclusion of some jobs can be harmless error when other jobs exist in significant numbers in the national economy. Evans v. Colvin, 640 F. App'x 731, 736 (10th Cir. 2016). The Tenth Circuit has held that at step 5, to support a finding of nondisability, only one of three jobs presented by the VE must have a significant number of positions in the national economy. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009). The Tenth Circuit has not drawn a bright line establishing the number of jobs necessary to constitute a significant number, but it has found anywhere between 100 and 152,000 jobs can constitute a significant number. Evans, 640 F. App'x at 736; Stoke v. Astrue, 274 F. App'x 675, 684 (10th

---

[7]        Dictionary of Occupational Titles Volume II, 709, 1011 (4th ed. 1991).

Cir. 2008).   Eliminating the circuit board assembler and egg processor positions as available positions in the national economy decreases the number of jobs available to plaintiff from 107,000 to 12,000.   Tr. 52.   Many courts have found similar numbers to be numerically significant. See Holmes v. Saul, 2019 WL 3290492, at *6 (D.N.M. July 22, 2019) (11,700 jobs); Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs); Mills v. Berryhill, 2017 WL 3494223 (W.D. Ark. Aug. 15, 2017) (12,562 jobs); Sanchez v. Berryhill, 336 F. Supp. 3d 174, 178 (W.D.N.Y. 2018) (9,046 jobs); Murray v. Berryhill, 2018 WL 2159788, at *4–5 (D. Kan. May 10, 2018) (6,000 jobs).   Therefore, even without the circuit board assembler and egg processor positions, the economy has a significant number of final assembler positions and defendant's error was harmless.

The ALJ noted that Dr. Deutch identified variability in plaintiff's cognitive functioning and deficits in his perceptual reasoning, processing speed, working memory, sustained concentration and divided attention.   To account for these deficits, the ALJ limited plaintiff to simple, routine and repetitive work tasks that would allow him to be off task up to five per cent of the workday.   He also prohibited fast-paced, quota-based, assembly line production work and tasks that would require plaintiff to perform effectively under stress and only occasional changes in the work setting.

Plaintiff argues that his RFC is inconsistent with Dr. Deutch's objective examination and testing findings.   He argues that the ALJ did not account for the severity of his inability to sustain concentration and that the RFC should have indicated that he could not sustain concentration for the two-hour periods necessary to maintain work.   Defendant argues that the RFC adequately incorporated Dr. Deutch's listed limitations for plaintiff and that even if he did not, the ALJ was not required to include them.

Plaintiff does not explain how the RFC limitations are inconsistent with Dr. Deutch's findings, and the Court will not label findings as inconsistent if they can be harmonized. Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).  Further, the ALJ noted that Dr. Deutch's report did not constitute a medical opinion and therefore was not persuasive because "the report does not contain any specific functional findings regarding the claimant's ability to perform work-related mental activities.  (20 C.F.R. 404.1513(a)(2))."[8]  Tr. 22.  Thus, to account for Dr. Deutch's opinion, the ALJ did not err in limiting plaintiff to simple, routine and repetitive work tasks that would allow him to be off task up to five per cent of the workday.

Plaintiff argues that the RFC is unsupported because when determining his limitations, the ALJ incorrectly held that his "sporadic" work history, "unremarkable" imaging and examinations and daily activities were inconsistent with his allegations regarding his physical impairments and their impact on his ability to work.  Defendant argues that the Court should not reweigh the evidence or substitute its judgment for that of the ALJ.

In examining plaintiff's limitations, the ALJ found that his work history, imaging and daily activities were inconsistent with his allegations of disability.  The ALJ noted that plaintiff alleged that his disability began and impacted his ability to work in May of 2018, but he had only engaged in substantial gainful activity for seven of the past 15 years, indicating that plaintiff struggled to maintain employment before his alleged disability began.

The ALJ also noted that in mid-2018, plaintiff had a neurology evaluation which was

---

[8]     20 C.F.R. 404.1513(a)(2) states, "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities . . . ; (ii) Your ability to perform mental demands of work activities . . . ; (iii) Your ability to perform other demands of work . . . ; and (iv) Your ability to adapt to environmental conditions."

unremarkable.  He reported "sharp stabbing pain" and numbness in both lower extremities as well as mild back pain and "difficulty sitting in a chair for any significant amount of time."  The ALJ noted that Dr. Bamber found that plaintiff was in no acute distress and walked with a normal gait.  His strength was full and symmetrical with no evidence of clonus, joint deformities or laxity and cerebellar findings were normal.  His deep tendon reflexes were normal and he rose from his chair without difficulty.  His sensory function was "grossly normal to light touch" and to pin prick, and proprioception was grossly intact in both arms and both legs.  Dr. Bamber observed that the degenerative changes in plaintiff's spine were "incidental" and not "relate[d] to his presenting complaints."

Moreover, the ALJ noted that Dr. Bamber did not advise neurosurgical intervention.  Plaintiff continued to see a neurologist, but no clear etiology was discovered to explain his symptoms.  In addition, he could drive, prepare simple meals, read, manage funds, use the internet and care for his personal hygiene.  Thus, the ALJ found that plaintiff's work history and activities were not consistent with his allegations regarding his physical impairments and their impact on his ability to work.  Further, the ALJ found that although plaintiff complained of memory loss, difficulty with word finding and occasional stuttering, his neurology exam did not clearly correlate with his complaints.

The record contains substantial evidence to support these findings.  The Court will not reweigh the evidence and substitute its own judgment for that of the ALJ.  Flaherty, 515 F.3d at 1070.

## II.    Commissioner's Burden At Step Five

Plaintiff argues that (1) the RFC is flawed, which resulted in erroneous step five conclusions because the VE relied on an inaccurate RFC and (2) the VE testified inconsistently

with the DOT because simple work is inconsistent with GED level 2 jobs which require the ability to carry out detailed instructions. Defendant argues that (1) the evidence supports the RFC assessment and (2) the Court should find that a RFC limitation to simple work is consistent with GED level 2 jobs.

Based on the ALJ's failure to include a limitation to one- and two-step commands the VE testified that plaintiff could perform the positions of circuit board assembler (DOT 726.684-110) and egg processor (DOT 559.687-034). As stated above, however, any error was harmless because a significant number of final assembler positions are available in the national economy. Plaintiff's argument that the VE testified inconsistently with the DOT because simple work is inconsistent with GED level 2 jobs does not apply to the final assembler position. The final assembler position only requires a GED level 1, which does not involve the ability to carry out detailed instructions. Accordingly, the Court affirms the decision of the ALJ.

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **AFFIRMED.**

Dated this 14th day of April, 2022 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge